**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

|  |  |
|---|---|
| MARSHA HEATH, ROBERT KEMERY, SEAN LAWRENCE, and SCOTT ROGERS *on behalf of themselves and all similarly situated individuals*, <br><br>       Plaintiffs, <br><br> v. <br><br> DIAZ & ASSOCIATES, INC., <br><br>       Defendant. | <br><br><br><br> Civil Action No. **3:18-cv-00704-JAG** |

## CLASS ACTION COMPLAINT

COME NOW the Plaintiffs, Marsha Heath, Robert Kemery, Sean Lawrence, and Scott Rogers, on behalf of themselves and all similarly situated individuals, by counsel, and file this Class Action Complaint against Diaz & Associates, Inc. ("Diaz & Associates"). In support of their Complaint, Plaintiffs allege as follows:

### PRELIMINARY STATEMENT

1.   This is an action for actual and statutory damages; costs; and attorney's fees for Diaz & Associates' violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p.

2.   Plaintiffs allege claims against Diaz & Associates for its violations of § 1692e and of the FDCPA for its conduct of making false and misleading representations regarding the amount and legal status of Plaintiffs' debt and for collecting on an illegal debt. Through the use of deceptive practices and false statements, Diaz & Associates collected on loans that were invalid under Virginia law and that it knew or should have known were invalid.

3.     The practices of the entity that originally made the loan to Plaintiffs have been challenged by numerous actions across the nation, including in a Virginia class action suit of which Plaintiffs were class members. It appears that Diaz & Associates was attempting to collect on Plaintiffs' invalid loan following the final approval of a settlement that eliminated Plaintiffs' responsibility to pay the debt at issue in this case.

4.     The FDCPA was enacted by Congress specifically to prevent the kind of abusive conduct exhibited by Diaz & Associates here. The FDCPA was meant to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §§ 1692. Congress recognized that abusive debt collection practices, such as the practices employed by Diaz & Associates, cause harm to consumers, including "contribut[ing] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §§ 1692(a). Accordingly, the FDCPA "is a strict liability statute, and debt collectors whose conduct falls short of its requirements are liable irrespective of their intentions." *Ruth v. Triumph P'ships*, 577 F.3d 790, 805 (7th Cir. 2009).

## JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Plaintiffs reside in this district and a substantial part of the events giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

7.    Plaintiff Heath is a natural person residing in this District and Division. She is also a "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a.

8.    Plaintiff Kemery is a natural person residing in Virginia. He is also a "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a.

9.    Plaintiff Lawrence is a natural person residing in this District. He is also a "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a.

10.    Plaintiff Rogers is a natural person residing in this District and Division. He is also a "consumer" as defined and governed by the FDCPA. 15 U.S.C. § 1692a.

11.    Diaz & Associates is a Nevada corporation. Upon information and belief, Diaz & Associates specializes in the collection of debts. Diaz & Associates is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a.

## FACTS

12.    On or around May 8, 2013, Plaintiff Heath received a usurious payday loan from a lender called Western Sky Financial, LLC ("Western Sky"), which transferred her loan to WS Funding, LLC, which then named its corporate parent, CashCall, Inc., as the servicing agent for the loan (Plaintiff Heath's "CashCall loan"). Plaintiff Heath's CashCall loan was void *ab initio* pursuant to Virginia's usury laws. Va. Code § 6.2-1541.

13.    On or around July 3, 2013, Plaintiff Kemery received a usurious payday loan from Western Sky, which transferred his loan to WS Funding, LLC, which then named its corporate parent, CashCall, Inc., as the servicing agent for the loan (Plaintiff Kemery's "CashCall loan"). Plaintiff Kemery's CashCall loan was void *ab initio* pursuant to Virginia's usury laws. Va. Code § 6.2-1541.

14.    On or around July 9, 2013, Plaintiff Lawrence received a usurious payday loan from Western Sky, which transferred his loan to WS Funding, LLC, which then named its corporate parent, CashCall, Inc., as the servicing agent for the loan (Plaintiff Lawrence's "CashCall loan"). Plaintiff Lawrence's CashCall loan was void *ab initio* pursuant to Virginia's usury laws. Va. Code § 6.2-1541.

15.    On or around July 2, 2013, Plaintiff Rogers received a usurious payday loan from Western Sky, which transferred his loan to WS Funding, LLC, which then named its corporate parent, CashCall, Inc., as the servicing agent for the loan (Plaintiff Rogers's "CashCall loan"). Plaintiff Rogers's CashCall loan was void *ab initio* pursuant to Virginia's usury laws. Va. Code § 6.2-1541.

### *Virginia's Policy Regarding Usury and the Virginia Class Action Lawsuit Challenging the CashCall Loans*

16.    In accordance with Virginia's longstanding public policy against usurious loans, a person may not charge an annual percentage rate ("APR") exceeding 12% without first obtaining a consumer finance license from the Commonwealth. Va. Code §§ 6.2-1501(A), 6.2-303(A).

17.    Under Va. Code § 6.2-1541(A), any loan contract is void if the making or collection of the loan contract violates Virginia's 12% interest cap and no exception to the prohibition applies.

18.    Not only does Virginia law allow for enforcement against lenders, but it also authorizes consumers who paid on the usurious loan to recover from debt collectors the total amount of the interest paid, additional compensation for any interest collected in the last two years, and attorney's fees and costs. Va. Code Ann. § 6.2-305.

19.    Plaintiffs' CashCall loans and the practices of the enterprise that made, serviced, and collected on the loans made to Virginia consumers were challenged by a putative class

action brought in this District. *See Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 669 (4th Cir. 2016).

20.    In *Hayes*, no one "seriously disputed that [the CashCall] payday loans violated a host of state and federal lending laws." *Id.* Instead, the *Hayes* defendants sought to avoid liability for their multiple state and federal violations by claiming that their arbitration agreement barred suit in federal court. *See id.* at 670.

21.    The United States Court of Appeals for the Fourth Circuit rejected the *Hayes* defendants' attempt to enforce the arbitration agreement associated with the CashCall loans, holding that the agreement's choice of law provision—which was really a waiver of all federal law—was "simply unenforceable." *Id.* at 673-74.

22.    The Fourth Circuit declined to sever the choice of law provision from the remainder of the arbitration agreement noting that "one of the animating purposes of the arbitration agreement was to ensure that Western Sky and its allies could engage in lending and collection practices free from the strictures of any federal law." *Id.* at 676. The court observed that the loan agreements "starkly proclaim[ed]" that no federal law applied to the loans. *Id.* at 676. "The brazen nature of such statements," the Fourth Circuit noted, "confirmed that Western Sky's arbitration agreement [was] little more than an attempt 'to achieve through arbitration what Congress has expressly forbidden.'" *Id.* (quoting *Graham Oil Co. v. ARCO Prod. Co.*, 43 F.3d 1244, 1249 (9th Cir. 1994), *as amended* (Mar. 13, 1995).

23.    Following, the Fourth Circuit's remand of the case back to this District, the parties in *Hayes* reached a settlement agreement in which the defendants agreed to pay monetary consideration to the settlement class and to adjust to zero all the outstanding debts that were in

the defendants' possession.[1]  The Court issued a preliminary order approving the settlement on

January 30, 2017, and entered a final approval order on June 6, 2017.[2]

24.    Plaintiffs were members of the settlement class in *Hayes*.

### Extensive Litigation Surrounding
### the Void Loans Issued by CashCall

25.    In addition to the *Hayes* litigation, the usurious loans issued by CashCall have

been challenged in numerous cases brought all over the country.

26.    Attorneys general in multiple states have entered into settlement agreements with

the entities associated with the CashCall loans providing for monetary relief to consumers and, in

some cases, for the assessments of penalties and fees.

27.    For example, the Attorney General for the State of Georgia negotiated a

settlement agreement providing over $40 million in monetary relief to Georgia consumers who

were the victims of the usurious CashCall loans following a Georgia Supreme Court ruling

holding that the CashCall loans violated Georgia's usury laws. The Georgia Attorney General

noted that the settlement sent a strong message that Georgia would not tolerate "unscrupulous

lenders who prey on consumers by charging illegal interest and fees." [3]

---

[1] Stipulation and Agreement of Settlement, 3:14-cv-00258-JAG, Doc. 193 at 9-12 (Jan. 20, 2017), https://secure.dahladmin.com/VACASH/content/documents/PreliminaryApprovalOrder.pdf.

[2] Preliminary Approval Order, 3:14-cv-00258-JAG, Doc 193 (Jan. 30, 2017), https://secure.dahladmin.com/VACASH/content/documents/PreliminaryApprovalOrder.pdf.

[3] *See* Press Release, Office of Att'y Gen., Ga., Attorney General Chris Carr Announces $40 Million Plus Settlement with Online Payday Lender (Feb. 8, 2017), https://law.georgia.gov/press-releases/2017-02-08/attorney-general-chris-carr-announces-40-million-plus-settlement-online ($23.5 million in compensation, $17 million in loan forgiveness, $1 million civil penalty, and $500,00 attorney's fees and costs).

28.     Settlements have been reached in numerous other states, including in Florida,[4] Minnesota,[5] North Carolina,[6] Washington,[7] Michigan,[8] Nebraska,[9] Indiana,[10] and Oklahoma.[11]

### *Plaintiff Heath's Loan*

29.     Plaintiff Heath's usurious CashCall loan was originated on or around May 8, 2013.

---

[4] See News Release, Att'Gen. Pam Bondi, Fl., Attorney General Bondi and OFR Reach Multimillion Dollar Settlements with Online Lender (Jan. 12, 2017), http://myfloridalegal.com/__852562220065EE67.nsf/0/2F836464563D0EB5852580A600709370?Open&Highlight =0,western,sky ($11 million in compensation, $15 million in loan forgiveness, $500,000 civil penalty, $500,000 administrative fine, and $250,000 for costs).

[5] *Internet Lender CashCall, Inc. Barred from Doing Business in Minnesota*, Minn. Att'y Gen. Lori Swanson, https://www.ag.state.mn.us/Office/PressRelease/20160819InternetLender.asp (last visited May 24, 2017) ($11.7 million in monetary relief incuding a $4.5 million restitution fund).

[6] Att'y Gen. Roy Cooper, *Fast Cash Loans Cost More than You Bargain For*, N.C. Dep't of Justice (July 8, 2016), http://www.ncdoj.gov/News-and-Alerts/Consumer-Columns/Fast-cash-loans-cost-more-than-you-bargain-for.aspx ($9 million in compensation).

[7] Press Release, Wash. Dep't of Fin. Inst., Washington DFI Enters Settlement Agreement With CashCall and Western Sky Financial Over Unlicensed Internet Predatory Lending Activities (Oct. 21, 2015), http://dfi.wa.gov/news/press/washington-dfi-enters-settlement-agreement-cashcall-and-western-sky-financial-over ($1.9 million in refund payments).

[8] Media Release, Mich. Att'y Gen. Bill Schuette, Schuette, Flood Net $2.2 Million for Michigan Consumers in Western Sky and CashCall Settlement Involving High-Interest Loans (May 14, 2015), http://www.michigan.gov/ag/0,4534,7-164-46849-354551--,00.html ($2.2 million settlement fund).

[9] *Attorney General Doug Peterson and Director of the Department of Banking and Finance Mark Quandahl Announce Settlement with Western Sky Financial, CashCall, et al. for Predatory Internet Loans*, Neb. Att'y Gen. (May 5, 2016), https://protectthegoodlife.nebraska.gov/news/attorney-general-and-director-banking-announce-settlement-western-sky ($950,000 restitution fund, $557,066 in loan forgiveness, and $150,000 paid to Nebraska).

[10] Press Release, Ind. Att'y Gen., AG Zoeller, Department of Financial Institutions return $1M to consumers from Western Sky, CashCall settlement for unlawful lending (Oct. 14, 2016), http://www.in.gov/ActiveCalendar/EventList.aspx?fromdate=10/14/2016&todate=10/14/2016&display=Day&type= public&eventidn=253208&view=EventDetails&information_id=251970, ($1 million restitution).

[11] Press Release, Okla. Dep't of Consumer Credit, Oklahoma Department of Consumer Credit Enters Into Agreed Order with CashCall, Inc.(Feb. 23, 2017), https://www.ok.gov/okdocc/documents/2017-02-23%20DOCC%20Press%20Release.pdf.

30.     Plaintiff Heath's original CashCall loan was for $2,600, used an annual percentage rate of 135%, and included $75 in fees.

31.     Plaintiff made payments to CashCall totaling more than $5,000 before CashCall sold her loan to a third-party debt buyer in November 2014.

32.     Upon information and belief, Diaz & Associates began collecting Plaintiff Heath's usurious CashCall loan on or around May 25, 2018 on behalf of the owner of the loan at the time.

33.     In an attempt to collect on Plaintiff Heath's usurious Cashcall loan, Diaz and Associates sent Plaintiff Heath a letter on or around June 28, 2018. This letter stated that Plaintiff Heath owed $772.11 on her Cashcall loan, and offered Plaintiff Heath an opportunity to settle the account in full for a payment of $148.45.

34.     In addition, Diaz and Associates reported the collection account on Plaintiff Heath's Trans Union credit report. Its credit reporting to Trans Union indicated that Plaintiff Heath's Cashcall loan had an outstanding balance.

35.     Both of these representations were false because Plaintiff Heath did not owe any money on her Cashcall loan. Instead, the balance on the loan was forgiven as part of the *Hayes* settlement.

### *Plaintiff Kemery's Loan*

36.     Plaintiff Kemery's usurious CashCall loan was originated on or around July 3, 2013.

37.     Plaintiff Kemery's original CashCall loan was for $850, used an annual percentage rate of 169%, and included $300 in fees.

38.    Plaintiff Kemery made payments to CashCall totaling more than $1,700 before CashCall sold his loan to a third-party debt buyer in December 2014.

39.    Upon information and belief, Diaz & Associates began collecting Plaintiff Kemery's usurious CashCall loan on or around August 28, 2017 on behalf of the owner of the loan at the time.

40.    In an attempt to collect on Plaintiff Kemery's usurious Cashcall loan, Diaz and Associates reported the collection account on Plaintiff Kemery's Trans Union and Equifax credit reports. Its credit reporting indicated that Plaintiff Kemery's Cashcall loan had an outstanding balance.

41.    This representation was false because Plaintiff Kemery did not owe any money on his Cashcall loan. Instead, the balance on the loan was forgiven as part of the *Hayes* settlement.

### *Plaintiff Lawrence's Loan*

42.    Plaintiff Lawrence's usurious CashCall loan was originated on or around July 9, 2013.

43.    Plaintiff Lawrence's original CashCall loan was for $2,600, used an annual percentage rate of 135%, and included $75 in fees.

44.    Plaintiff Lawrence made payments to CashCall totaling more than $3,500 before CashCall sold his loan to a third-party debt buyer in February 2015.

45.    Upon information and belief, Diaz & Associates began collecting Plaintiff Lawrence's usurious CashCall loan on or around August 28, 2017 on behalf of the owner of the loan at the time.

46.    In an attempt to collect on Plaintiff Lawrence's usurious Cashcall loan, Diaz and Associates reported the collection account on Plaintiff Lawrence's Trans Union and Equifax

credit reports. Its credit reporting indicated that Plaintiff Lawrence's Cashcall loan had an outstanding balance.

47.    This representation was false because Plaintiff Lawrence did not owe any money on his Cashcall loan. Instead, the balance on the loan was forgiven as part of the *Hayes* settlement.

### Plaintiff Rogers's Loan

48.    Plaintiff Rogers's usurious CashCall loan was originated on or around July 2, 2013.

49.    Plaintiff Rogers's original CashCall loan was for $2,600, used an annual percentage rate of 135%, and included $75 in fees.

50.    Plaintiff Rogers made payments to CashCall totaling more than $3,000 before CashCall sold his loan to a third-party debt buyer in November 2014.

51.    Upon information and belief, Diaz & Associates began collecting Plaintiff Rogers's usurious CashCall loan on or around May 25, 2018 on behalf of the owner of the loan at the time.

52.    In an attempt to collect on Plaintiff Rogers's usurious Cashcall loan, Diaz and Associates reported the collection account on Plaintiff Rogers's Trans Union credit report. Its credit reporting indicated that Plaintiff Roger's Cashcall loan had an outstanding balance.

53.    This representation was false because Plaintiff Roger did not owe any money on his Cashcall loan. Instead, the balance on the loan was forgiven as part of the *Hayes* settlement.

### COUNT ONE:
### VIOLATION OF FDCPA, 15 U.S.C. § 1692e
### (PLAINTIFF HEATH'S CLASS CLAIM)

54.    Plaintiff Heath incorporates by reference each of the allegations set forth in the preceding paragraphs.

55.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Heath brings this action for herself and on behalf of a class initially defined as:

> All Virginia residents who (1) Diaz & Associates sent a letter to (2) seeking to collect a debt originating from CashCall and/or Western Sky (3) during the one-year period prior to the filing of this Complaint.
>
> Plaintiff Heath is a member of the putative class.

56.     **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiff Heath alleges that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Diaz & Associates, and the class members may be notified of the pendency of this action by published and/or mailed notice

57.     **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Diaz & Associates is a debt collector; (2) whether Diaz & Associates violated § 1692e of the FDCPA by attempting to collect debts that were void; and (3) the appropriate amount of statutory damages given the frequency and persistence of Diaz & Associates' violations of § 1692e, the nature of Diaz & Associates' violations, and the extent that Diaz & Associates' violations were intentional.

58.     **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff Heath's claims are typical of the claims of each putative class member. In addition, Plaintiff Heath is entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

59.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiff Heath is an adequate representative of the putative class because her interests coincide with, and are not antagonistic to, the interests of the members of the class she seeks to represent. Plaintiff Heath has retained counsel competent and experienced in such litigation; she intends to continue to prosecute the action vigorously; she and her counsel will fairly and adequately protect the interests of the members of the class; and she and her counsel have no interest that might cause them to not vigorously pursue this action.

60.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Diaz & Associates' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

61.    Diaz & Associates violated § 1692e by falsely representing in its collection letters that the Plaintiff and putative class members owed an outstanding balance on void Western Sky and Cashcall debts.

62.     Diaz & Associates further violated § 1692e by making a communication to Plaintiff Heath that misrepresented the legal status of her debt, misrepresented the amount Plaintiff owed on the loan, and used false and deceptive means to attempt to collect on an invalid loan.

63.     Upon information and belief, Plaintiff Heath alleges that, as a standard practice, Diaz & Associates contacted Virginia consumers and would use false and deceptive means in order to collect on the invalid loan and obtain information concerning the putative class members.

64.     Upon information and belief, Diaz & Associates' conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692e.

65.     Plaintiff Heath and the putative class members suffered actual damages as a result of Diaz & Associates' violations of § 1692e.

66.     Based on Diaz & Associates' noncompliance with § 1692e, Plaintiff Heath seeks, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

### COUNT TWO:
### VIOLATION OF FDCPA, 15 U.S.C. § 1692e
### (PLAINTIFFS' CLASS CLAIM)

67.     Plaintiffs incorporate by reference each of the allegations set forth in the preceding paragraphs.

68.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action for themselves and on behalf of a class initially defined as:

> All Virginia residents who (1) Diaz & Associates reporting a collection account to Equifax, Experian, or Trans Union (2) that reporting an outstanding balance on a debt originating from CashCall and/or Western Sky (3) during the one-year period prior to the filing of this Complaint.

Plaintiffs are members of the putative class.

69.    **Numerosity. Fed. R. Civ. P 23(a)(1).** Upon information and belief, Plaintiffs allege that the class members are so numerous that joinder of all is impractical. The names and addresses of the class members are identifiable through the internal business records maintained by Diaz & Associates, and the class members may be notified of the pendency of this action by published and/or mailed notice

70.    **Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the putative class, and there are no factual or legal issues that differ between the putative class members. These questions predominate over the questions affecting only individual class members. The principal issues include: (1) whether Diaz & Associates is a debt collector; (2) whether Diaz & Associates violated § 1692e of the FDCPA by attempting to collect debts that were void; and (3) the appropriate amount of statutory damages given the frequency and persistence of Diaz & Associates' violations of § 1692e, the nature of Diaz & Associates' violations, and the extent that Diaz & Associates' violations were intentional.

71.    **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of each putative class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other members of the putative class. All claims are based on the same facts and legal theories.

72.    **Adequacy of Representation. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the putative class because their interests coincide with, and are not antagonistic to, the interests of the members of the class they seek to represent. Plaintiffs have retained counsel competent and experienced in such litigation; they intend to continue to prosecute the action vigorously; they and their counsel will fairly and adequately protect the interests of the

members of the class; and they and their counsel have no interest that might cause them to not vigorously pursue this action.

73.    **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for members of the class individually to effectively redress the wrongs done to them. Even if the members of the class themselves could afford such individual litigation, it would be an unnecessary burden on the Courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Diaz & Associates' conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

74.    Diaz & Associates violated § 1692e by falsely representing in its credit reporting to Equifax, Experian, and Trans Union that the Plaintiffs and putative class members owed an outstanding balance on void Western Sky and Cashcall debts.

75.    Diaz & Associates' credit reporting further violated § 1692e by making a communication to that misrepresented the legal status of the Plaintiffs' and putative class members' debt, misrepresented the amount Plaintiffs and putative class members owed on the loan, and used false and deceptive means to attempt to collect on an invalid loan.

76.    Upon information and belief, Plaintiffs allege that, as a standard practice, Diaz & Associates reported this false information about Virginia consumers to the credit reporting

agency as a means to force consumers to pay these invalid loans so that their credit ratings would not suffer as a result of the outstanding collection account being reported about them.

77.    Upon information and belief, Diaz & Associates' conduct is a part of a broader practice of frequent and persistent noncompliance with § 1692e.

78.    Plaintiffs and the putative class members suffered actual damages as a result of Diaz & Associates' violations of § 1692e.

79.    Based on Diaz & Associates' noncompliance with § 1692e, Plaintiffs seek, individually and on behalf of the class, actual damages, statutory damages, reasonable attorneys' fees, and costs, pursuant to 15 U.S.C. § 1692k.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs request that the Court enter judgment on behalf of themselves and the classes they seek to represent against Diaz & Associates for:

A.    Certification for this matter to proceed as a class action;

B.    Actual and statutory damages as pled herein;

C.    Attorney's fees, litigation expenses, and costs of suit; and

D.    Such other or further relief as the Court deems proper.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,
**PLAINTIFFS**

By:    /s/ Kristi C. Kelly
Kristi C. Kelly, Esq., VSB #72791
Andrew J. Guzzo, Esq., VSB #82170
Casey Nash, Esq., VSB #84261
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572
(703) 591-0167 Facsimile
Email: kkelly@kellyandcrandall.com

Email: aguzzo@kellyandcrandall.com
Email: casey@kellyandcrandall.com

*Counsel for Plaintiffs*